**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT JAMES MATTHEWS, #365-846 | * | |
| Plaintiff, | * | |
| | * | |
| v | * | Civil Action No.  ELH-13-3669 |
| | * | |
| COREY SIMPSON, [1] | * | |
| WARDEN BOBBY SHEARIN, | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM**

Robert James Matthews, a Maryland prisoner incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has sued Corey Simpson and Bobby Shearin, pursuant to 42 U.S.C. § 1983.  ECF 1.  He seeks $50,000 for defendants' "negligence." *Id.* at 7.

Simpson, a correctional officer at NBCI, and Shearin, the former Warden of NBCI,[2] have filed a Motion to Dismiss or, in the Alternative Motion for Summary Judgment ("Motion," ECF 11), supported by exhibits.[3]  Although Matthews was notified of his right to respond, he has not done so.[4]  The motion is ready for disposition and no hearing is necessary to resolve it.  *See* Local Rule 105.6 (D. Md. 2014).

---

[1] Defendants indicate that the proper spelling of Cosey Simpson's first name is Corey. *See* ECF 11, n. 1.  The Clerk will be directed to amend the docket accordingly.

[2] Frank Bishop, Jr. is now the Warden of NBCI.

[3] References to exhibits are to those filed by defendants, and they are docketed at ECF 11. For the convenience of plaintiff, exhibits will be referenced by the number assigned to them by defendants and to the electronic case filing system.  However, all references to page numbers are to those generated by the court's electronic case filing system.

[4] Notice of defendants' dispositive motion and the opportunity to file affidavits and records in reply was sent to Matthews pursuant to the requirements of *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975).  *See* ECF 12.

# BACKGROUND

## I.  Matthews' Allegations

Matthews states that on April 8, 2011, he was involved in a fight at NBCI with inmate Steven Boteler.  ECF 1 at 6.  According to Matthews, correctional officers were aware that Boteler had Hepatitis C.  After the altercation, Matthews had open wounds and scratches from Boteler.  *Id.*  Officer Simpson and Officer Car[5] placed Matthews in a cell with a sink without running water.  According to Matthews, he was not permitted to wash or shower for three days with "that man's blood on me.  All medical did was give me a bandaid."  *Id.*

Matthews states he tested negative for Hepatitis C [6] when he first arrived at NBCI, and was tested again after the altercation. His test on April 8, 2011, after the altercation, was negative for Hepatitis C.  However, Matthews was tested again on November 8, 2012, however, and this time he tested positive for Hepatitis C.  *Id.*

Matthews faults defendants for putting him at risk and for his contracting of the disease. He states that while in prison he has never used or shared needles, had intercourse, used drugs, or been tattooed.[7]  He posits that "this altercation is the only way I could have contacted hepatitis C."  *Id.*  Further, he claims that if the officers had let him shower or clean-up, he would not have

_____

[5] Matthews did not name Officer Car as a defendant on his complaint form.  ECF 1 at 1. Adding Officer Car as a defendant would not alter the outcome of this case, for reasons discussed, *infra*.

[6] Hepatitis C is a contagious liver disease that ranges in severity from a mild illness lasting a few weeks to a serious, lifelong illness that attacks the liver. It results from infection with the Hepatitis C virus (HCV), which is spread primarily through contact with the blood of an infected person. Hepatitis C can be either "acute" or "chronic."
*See* http://www.cdc.gov/hepatitis/C/cFAQ.htm.  Matthews' record reports a negative HIV test. There is no mention of Hepatitis C. Ex. 5, ECF 11-7 at 5.

[7] Matthews' medical records dated November 4, 2010, reflect he had tattoos. Ex. 5, ECF 11-7 at 3, 9.  Photographs taken of Matthews after the incident showed tattoos on his arms.  Ex. 2, ECF 11-4 at 39-41.

become infected. *Id.* Matthews states, ECF 1 at 7:

> There is not a day I wake up and not feel sick.  I want to sue NBCI and [the] State of MD for their negligence and reckless behavior. Simply because they new [sic] this inmate was infected. They knew I had open cuts but yet they choose to put me in a cell with blood on me.  Now I'm in need of a liver transplant in which I cannot get while being incarcerated [sic].

## II. Defendants' Response

Defendants seek dismissal of the suit, claiming that Matthews failed to exhaust his administrative remedies, failed to state a claim upon which relief can be granted, and that they are immune from suit under the doctrine of qualified immunity.  ECF 11 at 2.

### A. Exhibits

Defendants' dispositive motion and verified pleadings include the Internal Investigation Unit (IIU) Report of the April 18, 2011 altercation. Ex. 2, ECF 11-4.  The IIU Report found that Matthews assaulted Boteler by striking him on the back of the head with a "homemade weapon" – a sock stuffed with batteries and other material. Ex. 2 at 5, 16, 19, 46.  The shift commander's report included in the IIU investigation record indicated that Boteler tried to get away but Matthews chased Boteller and then struck him, and they both fell on the floor, with Matthews on top.  *Id.* at 16.  The inmates were ordered several times to cease fighting before they separated. *Id.*

Boteler was handcuffed and escorted for medical treatment for bleeding from his head. He was taken to the emergency room for lacerations to his head. Ex. 2 at 9.  Officer Wilson handcuffed Matthews and escorted him to a holding cell.  *Id.*  Both inmates refused to provide statements. *Id.* Matthews was evaluated for treatment in the cell by a registered nurse. *Id.* Photographs were taken of the crime scene, officers, and inmates.  *Id.* at 16, 19, 36-43. Matthews' bloody clothes were also photographed.  *Id.* at 16, 19, 44**.**

Matthews did not file an administrative remedy procedure ("ARP") premised on the incident or the issues presented in this case.  Ex. 7, 8.

### B.  Simpson Declaration

In his Declaration of April 2, 2014, Officer Corey Simpson attests that on April 18, 2011, he was working in the Control Center and monitoring the security camera. Ex. 3, ECF 11-5, ¶ 5. He observed Matthews "throwing closed fist punches" at Boteler.  *Id.*  Simpson called for assistance and "continued to monitor the fight until sufficient staff arrived to break up the fight." *Id*. Simpson issued Matthews a Notice of Inmate Rule Violation and Disciplinary hearing on April 18, 2011, for violating rules 102 and 105. *Id*.  Subsequently, Matthews was found guilty of the rule violations.  Ex. 2 at 9, 47, 48.[8]

Simpson attests he had no physical or verbal contact with Matthews on April 18, 2011. Ex. 3, ¶ 7.  Further, Simpson states that he has no access to inmate medical records and had no knowledge of the medical status or condition of Matthews or Boteler.  *Id*. ¶ 8.

On April 18, 2011, Matthews was housed in Housing Unit 2.  *Id.* ¶ 3.  On that date, Matthews was reassigned to Housing Unit 1, Tier C, Cell 57S, where he was housed until April 26, 2011.  Ex. 1, ECF 11-3.  On April 23, 2011, Cell 57S was reported for maintenance for a clogged sink.  Ex. 4, ECF 11-6.  The sink was unblocked on April 25, 2011. *Id*.

### C.  Matthews' Medical Records

Defendants have submitted copies of Matthews' medical records.  Ex. 5, ECF 11-7.  The records, about 20 pages, show that on November 10, 2011, Matthews tested negative for HIV.[9]

---

[8] Matthews was given 312 days of segregation and 30 days of cell restriction. Additionally, he lost 180 days of visiting privileges and 30 days of good conduct credits.  Ex. 2 at 7.  Boteler, who was charged with the same rule violations, was found not guilty. *Id*.

[9] HIV, or Human Immunodeficiency Virus, is spread through body fluids that affect specific cells of the immune system, called CD4 cells, or T cells. Over time, HIV can destroy so

*Id.* at 10.  Matthews was seen by medical staff on April 18, 2011, after the altercation in which he was reported to be the aggressor.  *Id.* at 11.  He was treated for three "superficial" scratches on his right upper lip, with no active bleeding.  *Id.*  Plaintiff was given antibiotic ointment packets and instructed to cleanse the scratches with soap and water and then apply triple antibiotic ointment.  *Id.*

Notably, at the time, Matthews denied pain or other injury from the altercation and denied recollection of the altercation.  *Id.*  Matthews was not reported to have expressed any concerns about blood exchange to nursing staff.  *Id.*

On January 12, 2012, Matthews submitted a sick call stating that copies of his records could be obtained from York County prison, he has Hepatitis C, and needed the "interferon shot."  *Id.* at 14.  On January 17, 2012, Matthews told medical staff that he had previously tested positive for Hepatitis C.  *Id.* at 15.  Matthews stated that he did not recall receiving any vaccinations or laboratory results.  *Id.*  Prison medical staff ordered Hepatitis C and HIV testing for Matthews, which returned positive findings for the Hepatitis C antibody.  *Id.* at 18-20.  He is receiving treatment at NBCI for the condition.  *Id.* at 19-20.

Prison medical providers obtained Matthews' medical records from York County Prison, in York, Pennsylvania.  *Id.* at 13.  Those records indicated Matthews was diagnosed positive with Hepatitis C while at York County Prison in September of 2011.[10]  *Id.*

Of import here, in September 2011, Boteler was tested for Hepatitis C.  The results of his test were negative.  Ex. 6, ECF 11-8 at 2, 6.

Additional facts are included in the Discussion.

---

many of these cells that the body cannot fight infection and disease.  *See* http://www.cdc.gov/hiv/basics/index.html.

[10]  The record does not indicate why Matthews was sent to York County Prison in September of 2011.

## STANDARD OF REVIEW

Defendants' Motion is styled alternatively as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or a motion for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur.  In that circumstance, the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[11]  Nonetheless, Matthews was informed of his right to respond to the motion and to submit affidavits, declarations, and other documentary evidence in support.  ECF 12.  He has not replied.

---

[11] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. Du Pont de Nemours and Co. v. Kolon Industries*, *Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244–45 (discussing affidavit requirement of former Rule 56(f)). Plaintiff has not filed an affidavit under Rule 56(d).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, and fails to file a Rule 56(d) affidavit, he does so at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for

discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted).  Conversely, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Matthews never filed an affidavit pursuant to Fed. R. Civ. P. 56(d).  And, the court is satisfied that it is appropriate to address the motion as one for summary judgment, as this will facilitate resolution of this case.  Therefore, I next turn to the standards governing summary judgment.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  As the Fourth Circuit recently observed, Fed. R. Civ. P. 56 "is a mechanism to obviate trial . . . ." *Boyer-Liberto v. Fontainbleau Corp.*, 752 F.3d 350, 355 (2014), *rehearing en banc granted* (July 1, 2014).

The non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith, Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Then, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the court may not make credibility determinations on summary judgment. *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006).

Generally, in the face of conflicting evidence, such as competing affidavits, summary judgment is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See*, *e.g.*, *Boone v. Stallings*, ____ Fed. App'x. ____, No. 14-6521 (4th Cir. Sept. 11, 2014) (per curiam). However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248. On the other hand, a court must award summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, the court must also abide by the " 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.' " *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

Defendants assert that Matthews has failed to properly exhaust administrative remedies, failed to state a cause of action upon which relief can be granted, and that they are entitled to qualified immunity.

### I.   Exhaustion of Remedies

Defendants assert that Matthews failed to exhaust his administrative remedies under the

Prisoner Litigation Reform Act ("PLRA").  It provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s).  *See Jones v. Bock*, *supra*, 549 U.S. at 215-216; *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

 The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an administrative remedy procedure "available" to Maryland state prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against  . . . official[s] or employee[s] of the Division of Correction ["DOC"]."  Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq*. Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or

confinement."  Code of Maryland Regulations ("COMAR") 12.07.01.01B(8).[12]  In the Maryland

correctional system, if the particular institution in which an inmate is incarcerated provides an

administrative remedy procedure, the inmate must complete the ARP process as a condition

precedent to further review of the inmate's grievance.  *See* C.S. § 10-206(b); *see also* COMAR

12.07.01.02.D.

Filing a request for administrative remedy with the Warden of the Maryland prison in

which one is incarcerated is the first of three steps in the Administrative Remedy Procedure

process provided by the Division of Correction to its prisoners.  If this request is denied, the

prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this

appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance

Office ("IGO").  *See* COMAR 12.07.01.03; 12.07.01.05.B; *see also* C.S. § 10-206.  Complaints

are reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR 12.07.01.06.  If the

complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it

---

[12] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'"  *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted).  Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'"  *Id.* at 651, 898 A.2d at 960 (citation omitted).  Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC.  *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy.  *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers.  *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

without a hearing.  C.S. § 10-207(b)(1).  The order of dismissal constitutes the final decision of

the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a

hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge

with the Maryland Office of Administrative Hearings.  *See* C.J. § 10-208(c); COMAR

12.07.01.07-.08.  The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a

final agency determination.  However, a decision concluding that the inmate's complaint is

wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must

make a final agency determination within fifteen days after receipt of the proposed decision of

the administrative law judge.  *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in a Maryland

state court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an

inmate need not seek judicial review in state court in order to satisfy the PLRA's administrative

exhaustion requirement.  *See*, *e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A]

prisoner who uses all administrative options that the state offers need not also pursue judicial

review in state court."), *cert. denied*, 537 U.S. 949 (2002).

A prisoner is subject to the strict requirements of the exhaustion provisions.  *See Porter v.

Nussle*, *supra*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion

requirement between suits alleging unconstitutional conditions and suits alleging

unconstitutional conduct).  If the defendants show that a claim is subject to the ARP process but

has not been exhausted, the merits of the claim may not be considered by this court.  *See Jones v.

Bock*, *supra*, 549 U.S. at 220; *see also Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative

grievances until they receive a final denial of the claims, appealing through all available stages in

13

the administrative process. *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd*, 98

Fed. App'x. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md.

1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not

appeal his administrative claim through all four stages of the BOP's grievance process); *see also*

*Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to

exhaust where he "never sought intermediate or full administrative review after prison authority

denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner

must appeal administrative rulings "to the highest possible administrative level"); *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps

to meet the exhaustion requirement, but need not seek judicial review).

    Administrative remedies must, however, be available to the prisoner, and this court is

"obligated to ensure that any defects in administrative exhaustion were not procured from the

action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th

Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Fourth Circuit addressed

the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a
> prisoner, through no fault of his own, was prevented from availing himself of it.
> *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v.*
> *Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust
> all available remedies simply by failing to follow the required steps so that
> remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548
> U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner
> must have utilized all available remedies "in accordance with the applicable
> procedural rules," so that prison officials have been given an opportunity to
> address the claims administratively. *Id.* at 87. Having done that, a prisoner has
> exhausted his available remedies, even if prison employees do not respond. *See*
> *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

    As noted, defendants have shown that there is no record that Matthews sought resolution

of any issues raised in his suit through the institutional remedy process. Indeed, Matthews

acknowledges that he did not pursue his administrative remedies, explaining: "Nothing ever gets done.  Also, this prison is now being investigated."  ECF 1 at 2.[13]  Although Matthews may regard the ARP system as flawed, he does not allege or suggest the procedure was unavailable to him.  Having neither accessed nor attempted to access the administrative remedy process to resolve his claims as to prison conditions, Matthews cannot overcome the defendants' claim that, as to that contention, he failed to exhaust his administrative remedies.[14]

Alternatively, even had Matthews satisfied the exhaustion requirement, summary judgment in favor of defendants is appropriate on other grounds as well.

## II.    Failure to State a Claim

Aside from naming Warden Shearin as a defendant in the caption of the complaint, Matthews raises no claims against Shearin, nor does he allege that Shearin was involved in the matters at issue.  To the extent Matthews has named Shearin in his supervisory capacity, his claim is unavailing.

Section 1983 of 42 U.S.C. provides that "[e]very person" who, under color of state law, causes the violation of another's federal rights shall be liable to the party injured by his conduct. *See Owens v. Baltimore City State's Attorneys Office*, ____ F.3d ____, No. 12-2173, slip op. at 44 (4th Cir. Sept. 24, 2014).  Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  But, a suit under § 1983 allows "a party who has been deprived of a federal right under the color of state

_____

[13]  Matthews does not explain the nature of the investigation or its relation to the ARP process.

[14]  Because the assault was under IIU investigation, it is possible that the Division of Correction, per its general practice, would have declined ARP review. Matthews' conditions of confinement claims, however, were not investigated by the IIU and could have been considered through the ARP process.

law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

   To state a claim under § 1983, a plaintiff must allege that 1) a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 112 (2011).

   An individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). In a § 1983 action, liability of supervisory officials such as Shearin "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001 (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

   Supervisory liability must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994).   Given the absence of any facts (or

evidence) to hold Shearin culpable under a theory of supervisory liability, he is entitled to summary judgment.

### III.   Claims Against Officer Simpson

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter,* 501 U.S. 294, 297 (1991)).

### A.   Conditions of Confinement

Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment, in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions that are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

In order to establish the imposition of cruel and unusual punishment, a prisoner must prove that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' and that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008 (citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "'the test is whether the guards know the plaintiff inmate faces a serious

danger to his safety and they could avert the danger easily yet they fail to do so.'" *Brown v. North Carolina Dept. of Corrections*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993); *see Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991))..

Matthews maintains that Simpson was negligent for placing him in a cell without running water and for refusing to provide Matthews with a shower for three days. In his Declaration, Simpson attests that he was unaware of either Matthews' or Boteler's medical conditions. *See* Ex. 3, ECF 11-5, at ¶ 8. Further, Simpson had no verbal or physical contact with Matthews on the day of the altercation. *Id.* And, contrary to Matthews' assertions, as of September 2011 Boteler was not shown to have Hepatitis C (Ex. 6, ECF 11-8 at 2, 6), thus casting serious doubt as to whether there was transmission of the disease as a result of the altercation on April 8, 2011.

Matthews has failed to refute the information provided as to Boteler. Moreover, he has failed to establish that Simpson acted with knowledge of and disregard to an excessive risk of harm to plaintiff's health or safety. As such, Matthews' allegations, even when viewed in the light most favorable to him, fail to support an Eighth Amendment claim of unconstitutional conditions of confinement.

### B.  Medical Care

A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment. *Jackson v. Lightsey*, ____ F.3d ____, No. 13-7291, slip op. at 15 (4th Cir. Dec. 18, 2014); *see Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014).  Notably, "deliberate indifference is 'a very high standard,' *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), which requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser*, 772 F.3d at 347 (*citing Farmer*, 511 U.S. at 837).

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.' " *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844)).  Even if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  But, reasonableness of the actions taken must be judged in light of the risk the defendant actually

knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton,* 157 F. 3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). In other words, deliberate indifference to a serious medical need "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U .S. at 835; *see Grayson*, 195 F.3d at 695.

Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Johnson,* 145 F.3d at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Moreover, mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975). As indicated, deliberate indifference requires proof that the prison official knew of or was aware of the inmate's need for medical attention and disregarded an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837. For liability to attach based on a violation of the Eighth Amendment, the law "requires consciousness of a risk . . . ." *Id*. at 840.

Of import here, prison officials are also entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to

have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

As a nonmedical member of the prison staff, Simpson was entitled to rely on the judgment of the medical practitioners who attended to Matthews.  Plaintiff was treated by medical a provider on the day of the altercation for superficial scratches to his lip, and both Matthews and Boteler tested negative for Hepatitis C right after the incident.  Boteler tested negative for the condition in September 2011, approximately the same time Matthews was reported to have tested positive for Hepatitis C.  Ex at 13; Ex. 6.  Matthews has provided no verified exhibits or affidavits to rebut this information, nor does he allege that Simpson sought to prevent or interfered with his medical care.

 Simpson's conduct does not constitute deliberate indifference so as to support a claim of constitutional violation.[15]  No genuine issue of material fact is presented and Simpson is entitled to summary judgment in his favor as a matter of law.

### CONCLUSION

For the above reasons, the court will grant defendants' motion for summary judgment. Judgment will be entered in favor of defendant and against plaintiff by separate Order.


December 23, 2014_____                         _____/s/_____
Date                                             Ellen Lipton Hollander
                                                 United States District Judge

---

[15] In light of this analysis, the court need not reach defendants' qualified immunity defense.